UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,　　　　　　　　　　CRIMINAL NO. 16-cr-20659- 001

v.　　　　　　　　　　　　　　　　HON. ARTHUR J. TARNOW

ANDREW FRANJ WEIKEL,

    Defendant.

_____/

**Government's Sentencing Memorandum**

Defendant Andrew Weikel stands convicted of transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1). For the reasons stated in this memorandum, the government requests that the Court accept the parties' Rule 11 Plea Agreement and sentence Weikel to a below guidelines sentence of 11 years 3 months' (135 months) imprisonment. Such a sentence is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

**I.    PROCEDURAL HISTORY**

On June 9, 2017, defendant entered a guilty plea to Count Two of the Information, which charged him with transportation of child pornography. (PSR ¶ 7). Defendant's guilty plea was pursuant to a Rule 11 Plea Agreement. (R.44, Plea

1

Agreement).  In the plea agreement, the government agreed to dismiss Count One of the Information which charged production of child pornography and not pursue a mandatory 15-year sentence in prison *Id.* at 2. The defendant agreed to recommend and seek a sentence of no less than 8 years in prison, *id.* and the government reserved the right to withdraw the plea offer and the plea agreement if the Court imposes a sentence below 8 years in prison or if defendant requests such a sentence. *Id.*

**II.    STATEMENT OF FACTS**

On August 7, 2016, Weikel and a thirteen-year-old girl (Minor Victim or MV) arrived at the Port Huron, Michigan, Bluewater Bridge, following a visit to Ontario, Canada on their way home to Indiana.  PSR ¶ 11. Weikel had 44 images of MV with an adult male penis placed on and/or in close proximity to her head or hands while she slept located in the deleted file on his Iphone. PSR ¶ 12, 14.  Also in his possession at the border was his HP laptop with 76 images of the MV with the penis located in files labeled with MV's initials. PSR ¶ 12, 14.

Weikel had been to Canada to visit his sister.  He said that MV's mother suggested that he take MV to Canada before school started so she could see another country. PSR ¶ 14.  Prior to his trip to Canada, Weikel was staying with MV's family for several months.  PSR ¶ 14.  MV lived with her mother, father and two siblings (a six year old brother and a four year old sister), in a mobile home in Wabash, Indiana.  Weikel was the former boss and a long-time friend of MV's mother and

had known MV since she was a baby. PSR ¶ 14. Most of the time Weikel was staying with MV's family he slept in his converted van parked on the property. PSR ¶ 14. Weikel was invited to stay in the family home for a few weeks while his van was being repaired. PSR ¶ 14. Prior to his arrival at MV's household, Weikel was living out of his van, traveling the country after retiring from a supervisory position at Wendy's. PSR ¶¶ 14, 18. He had temporary seasonal employment with Amazon in Kentucky. PSR ¶ 18.

Weikel admitted that he took the pictures of his penis and MV sleeping, and that he took them with his iPhone. PSR ¶ 14. EXHIBIT A is one of the pictures of MV sleeping without Weikel's penis in the frame. It does not contain pornography. When asked why he took the pictures, Weikel stated that it was to see if he could get away with it. PSR ¶ 14. Weikel also admitted to taking pictures of his penis on MV's mother's pillow, while she was asleep, PSR ¶ 14, and that he hid a GoPro in the master bedroom of MV's home to film MV's mother changing her clothes. PSR ¶ 14.

On August 7, 2016, MV was interviewed by a Victim Witness Specialist at the border. She had just reached the age of 13 the month before and was carrying the doll she purchased for herself from the money given to her on her birthday. EXHIBIT B is a screen shot of video of MV at the interview. MV identified

3

herself in several of the pictures she was shown. PSR ¶ 17.  MV was unaware that Weikel had taken pictures of her while she was sleeping. PSR ¶ 17.

MV's mother told HSI agents that she had a prior incident with Weikel touching and rubbing her back while she was sleeping. EXHIBIT C. MV's mother indicated that she felt uncomfortable with the touching, so she feigned sleep at the time and addressed the matter later with her husband and Weikel.  *Id.*

There are 76 photographs that include MV sleeping with Weikel's penis near or on her face and/or hand that were located on Weikel's HP laptop when crossing the border.  PSR ¶ 15.  These were taken on the iphone and downloaded to the computer from where they were located on the OneDrive and then saved on the computer in specific files. PSR ¶ 15. The pornographic photographs of MV were in a separate subfile labelled with her initials and the images of MV's mother were in a different subfile labeled with her initials. PSR ¶ 15.  There are 44 photographs that include MV sleeping with Weikel's penis near or on her face and/or hand that were located on Weikel's phone when crossing the border.  PSR ¶ 15. These photographs were taken on the phone on 6 separate dates over a two-week period just prior to the trip to Canada. PSR ¶ 15.  Most of the daily photo shoots involved a number of different angles and poses of the penis.  PSR ¶ 15.  MV was clothed in all of the pictures and appears to be sleeping.  PSR ¶ 16.  All of the images were

taken in MV's living room in Indiana during the time Weikel was living with

MV's family. PSR ¶ 15.

| Date Series of Images Created | Description of pornographic photographs in Series |
|---|---|
| 7/9/2016 | MV's mother sleeping with Weikel's penis on her pillow near her arm. PSR ¶ 14. |
| 7/21/2016 | MV sleeping in a white t-shirt on a couch. In the images, MV's head and hands are visible. In several photographs, Weikel's penis is near MV's hand. PSR ¶ 16. |
| 7/24/2016 | MV sleeping in a white t-shirt without sleeves and a beige blanket on a couch. In several photographs, MV's hand is resting on the armrest of the couch with Weikel's penis almost touching it. |
| 7/28/2016 | MV sleeping at times wrapped in a beige blanket with Weikel's penis in the foreground pointed at MV's mouth and face. |
| 7/31/2016 | MV sleeping in a light green t-shirt on a couch. MV's face is visible, and Weikel's penis is near her head. In at least one picture, Weikel's penis appears to be touching MV's head near her hairline. In another picture, Weikel's hand is holding his penis near MV's head. PSR ¶ 16. |
| 8/1/2016 | MV sleeping in a dark gray t-shirt on a couch. MV's face is visible, and Weikel's penis is near her head. In at least one picture, Weikel's penis appears to be touching MV's ear. PSR ¶ 16. |
| 8/3/2016 | MV sleeping wrapped in a fleece butterfly blanket with Weikel's penis very close to MV's mouth. |

5

Agents found no other images of child pornography on the electronic devices. PSR ¶ 16. In his written statement Weikel states he is adamant that he has never had an interest in minor children in anyway sexually. PSR ¶ 18. He was sorry for his conduct and indicated that he will not impose on others and he will use better judgement to leave if there is ever a situation where he is intruding in other's lives or is bored with his own circumstances. PSR ¶ 18.

Weikel is 65 years old. He suffered from collapse and EMS was called when he was being interviewed at the border.

### III. SENTENCING GUIDELINES CALCULATION AND RELEVANT 3553(a) FACTORS

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

Here, the government seeks a below-guidelines sentence and will withdraw from the plea agreement if the Court imposes a sentence below 8 years.

### A.     The Sentencing Guidelines Range

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) when determining an appropriate sentence. As the Supreme Court noted in *United States v. Rita*, 551 U.S. 338, 345 (2007), "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." The appropriate guideline range for Defendant is in dispute, and the government and Defendant have calculated different guideline ranges for Defendant. (PSR ¶ 8, Plea Agreement).

Defendant pleaded guilty to transportation of child pornography (PSR ¶ 8, Plea Agreement). The government asserts and Probation agrees that the correct guideline range is 168–210 months, because the cross-reference to the production guideline applies to Defendant. *See* PSR ¶¶ 60, 61. Defendant argues that the correct guideline range is 108 -135 months. PSR ¶ 61.

### B.     Sentencing Guidelines Dispute

The parties disagree on the applicability of two guidelines: sexual contact U.S.S.G. §2G2.1(b)(2)(A) and custody care or supervisory control, U.S.S.G. §2G2.1(b)(5), each with a two level increase.  Probation has taken the position that both guideline enhancements apply.

1. **Sexual contact**

U.S.S.G. §2G2.1(b)(2)(A) provides for a two level increase if the offense involved the commission of sexual contact. "Sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. 18 U.S.C. § 2246(3). The government takes the position that, in several of the photographs, Weikel's penis touches MV. PSR ¶ 19. Probation also scored this guidelines enhancement. *Id.* But the government also agrees with Probation and suggests the Court directly view the images in question in order to make a determination. The government will have them available at sentencing.

2. **Custody care or supervisory control**

U.S.S.G. §2G2.1(b)(5) provides for a 2 level increase if the defendant was a parent, relative, or legal guardian of the minor involved in the offense, or if the minor was otherwise in the custody, care, or supervisory control of the defendant. The Commentary to § 2G2.1(b)(5) states that it is "…. Intended to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently" and "...the court should look to the actual relationship that existed between the defendant and the minor…" U.S.S.G. §2G2.1, Application note 5.

The relationship between Weikel and MV is exactly the type of situation intended for the two level enhancement. Weikel was a close family friend for many years and was treated as part of the family. Weikel was living within the family home at the time of the taking of the photographs. MV was comfortable traveling alone with Weikel, her first time to a foreign country. PSR ¶ 14. It was MV's mother who had suggested that she go with him. PSR ¶ 14. MV's mother legally entrusted MV to Weikel's care, even giving him the responsibility and trust to make medical decisions for MV as indicated on the permission letter signed by MV's mother. PSR Addendum p. A-1,2. This letter was dated and signed August 3, 2016, the very day that Weikel took pictures of his penis within centimeters of MV's mouth. *Id*. If MV's mother signed over her child completely to Weikel's care on August 3, 2016, it can be inferred that as she slept and without other adults present, MV was in the custody and care of defendant consistent with their relationship. Finally, MV was legally in defendant's custody and care when crossing the border with the images of her on his computer and phone.

**IV.   ARGUMENT**

Although defendant pled guilty to transportation of child pornography, at its heart, this case involves production of child pornography and the victimization of a 13-year-old girl, at her most vulnerable, sleeping in her own home. Although the

9

government is recommending a lower than guidelines sentence, the seriousness of the crime should not be disregarded.

### A. The Factors under 18 U.S.C. § 3553(a)

The Supreme Court has noted that, in formulating the sentencing guidelines, the United States Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338 (2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350.

#### 1. The Nature and Circumstances of the Offense.

In her most vulnerable moments, Weikel violated MV's innocence by intruding his penis upon her sleep and recording her, without her permission, without her knowledge, and with an express sexual interest shown by recording his sexual contact with her. MV is no less a victim because she did not awake. Given the progression of Weikel's actions, it was only a matter of time before MV woke up during Weikel's exploitation of her.

Weikel's behavior betrayed the trust developed over a decade that MV's family placed with him. He was close to the family, invited to live in their home with their three minor children. Weikel's sexual exploitation of MV was not

merely a small transgression for a few days, it was a progression of offenses where Weikel's increasing boldness was escalating the danger level to MV. The evidence shows that as Weikel gained successes with his photography skills, he became even more emboldened. He purchased a GoPro to covertly photograph private moments in the family when he could not be present undetected. He escalated his offenses. Weikel is caught touching MV's mom while she is sleeping. But instead of backing off, he turns his sight to MV and begins photographing her. The progression continues with each series of photos from him merely including his penis in the pictures, placing it at her hands, then getting closer to her face and touching her. While Weikel only had a short period of time while he lived in the house with MV's family, he took immediate advantage of that opportunity by taking pictures on six separate days in barely over a weeks' time.

    And it wasn't enough just to participate in these sexual contacts, Weikel recorded these secret sessions on his iPhone. Then, he transferred those photos from the iPhone to his computer and set up a filing system where he could easily identify and retrieve them. The offense was calculated, devious, and particularly damaging because of his relationship with the child he chose to exploit.

## 2. History and Characteristics of the Defendant.

Weikel has spent the recent years of his retirement, as a loner with an antisocial lifestyle. He is 65 years old and has had health issues, demonstrated on the night of his arrest at the border.

Weikel seemed to have a long and supportive history with MV and her mother prior to the discovery of the photos. Secrecy and exploitation of that trust show a side of Weikel that is both deceptive and calculating.

Except for the images of MV and her family, the forensic review of Weikel's electronics did not uncover any collection of child pornography. This fact, along with Weikel's age and health, are factors that contributed to the government's recommendation of a lower than guidelines sentence.

## 3. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense.

The seriousness of defendant's offense requires a significant custodial sentence particularly because of the crime of production and Weikel's breach of the trust of MV and her family. An 11 year 3 month sentence will promote respect for the law, provide just punishment, and acknowledge the seriousness of Defendant's offenses. Although possession and receipt of child pornography are extremely serious crimes, here, Defendant goes much further by creating new child pornography. MV and her family will deal with the repercussions of this offense for years to come. One court observed that "the victims of child pornography

12

suffer long-term effects—'the violation of innocence in perpetuity'—and that child pornography 'degrades us as a civilized human race.'" *United States v. Whitmore,* 546 F. App'x 568 (6th Cir. 2013).

### 4. Adequate deterrence and protection of the public.

The above considerations impact another § 3553(a) factor—the need to deter such conduct in the future. Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006). A significant sentence is necessary so that Weikel and others will understand the consequences of child exploitation and pornography offenses, and deter him and others from engaging in this conduct in the future.

The Sixth Circuit has explained that deterrence is particularly important when dealing with child pornography cases. This is because most child pornography crimes occur in private, making them easy to commit and very difficult to detect. *United States v. Kirchholf,* 505 F.3d 409, 415 (6th Cir. 2007). Here, because of the factors discussed above, even a below guidelines sentence is sufficient to deter others from engaging in this conduct.

### 5. Kinds of sentences available and the need to avoid unwarranted sentencing disparities.

A below-guidelines sentence is consistent with sentences for defendants found guilty of similar conduct. Weikel used surreptitious methods to produce

13

child pornography. There is no evidence that he distributed the images, and no evidence of other child pornography was found in his possession. However, Weikel abused a sleeping child when she was particularly vulnerable *touching* her with his penis, thus his situation is more deviant than many of the examples below.

Other defendants that used surreptitious methods to produce child pornography or other inappropriate images of children convicted of child pornography offenses in the Eastern District of Michigan have received the following sentences:

- Tyler Cope-Gass, EDMI 13-20771. Cope-Gass surreptitiously recorded his 13-year-old female cousin while she undressed. She did not know that she was being recorded and Cope-Gass did not sexually assault her or any other children. There was no concrete evidence that Cope-Gass distributed the videos that he created. He had a collection of other child pornography. He was sentenced to 10 years (120 months).

- Christopher Granger, EDMI 14-20598. Granger took surreptitious photographs of young boys, but the photographs did not depict the boys' genitalia and were not child pornography that he downloaded from the internet. He was sentenced to 10 years (121 months).

- Aaron McRae, EDMI 13-20003. McRae surreptitiously took one photograph of his seven-year-old nephew as the boy came out of the shower.

14

McRae used photoshop tools to blur out the child's genitals and posted the altered photograph on Website A. McRae did not have any sexual contact with his nephew or any other children. He had a collection of other child pornography. McRae was sentenced to 10 years (120 Months).

- Matthew David Kuppe, EDMI 15-20522. Kuppe surreptitiously took photographs of pictures of three 5-6 year old boys in a locker room of a summer camp and posted some of them online asking for an exchange of photos for sharing more. Kuppe openly expressed a sexual interest in the children and chatted with other pedophiles about touching of the boys. In addition, defendant texted young boys, sending pictures of his penis and asking for them to send pictures of theirs. Defendant was very young-just reaching the age of 18 at the time of the prosecution.

A below guidelines sentence is also consistent with, or lower than, sentences for defendants found guilty of similar conduct in other districts. Other defendants that used surreptitious methods to produce child pornography around the country have received the following sentences:

- Tomas Hamel, Western District of Michigan 2:15-cr-11. Hamel was a high school wrestling team trainer, and he took surreptitious videos of boys weighing in for wrestling meets while in the nude, in the trainer's room, and coming out of the showers. There was no evidence that Hamel

distributed the videos that he created He was 68 years-old at the time of sentencing, and received a 15 year sentence.

- Balazs Tarnai, Western District of Pennsylvania, 11-234. Tarnai placed hidden cameras in his home to record young boys on multiple occasions. There was no evidence that he distributed the pictures he created, or that he had sexual contact with children. Tarnai was sentenced to 15 years.

- Melvin Holmes, Middle District of Florida, 13-00047. Holmes placed hidden cameras in his bathroom to record his stepdaughter undressing. He did not distribute the images that he created, and he did not possess any other child pornography. He was sentenced to 15 years.

- Matthew Hansen, Eastern District of Missouri, 4:13 CR 26 JCH. Hansen was an elementary school teacher and he hid cameras in school bathrooms and recorded 5th graders undressing during school functions. He had a collection of additional child pornography. There was no evidence that Hansen ever had sexual contact with a child. Hansen was sentenced to 20 years.

- John Dewey Todd, Middle District of Florida, 3:14-cr-11-J-39JRK. Todd placed a hidden camera in his bathroom to surreptitiously record young girls using the toilet and taking a bath while they were in his home. He had a collection of other child pornography that he

downloaded through the internet. He did not distribute the images he produced, and there was no evidence that he had sexual contact with any children. Todd was sentenced to approximately 19.5 years.

- James Stanley, District of Maryland, GLR-15-0432. Stanley surreptitiously recorded his 14 year-old stepdaughter in the shower, but her genitals were not visible in the recording that he created. Stanley admitted to using the camera to record his stepdaughter on approximately 10 occasions, but only one video was recovered by investigators. There was no evidence that Stanley had sexual contact with any children, but Stanley had a collection of other child pornography. He received an 18 year sentence.

B.   **Restitution and Crime Victims' Rights Act**

MV has submitted a restitution request and wishes to invoke her right to be heard at the sentencing hearing. The Crime Victims' Rights Act (CVRA), 18 U.S.C. §3771, guarantees victims in criminal cases specific rights that are enforceable in federal court. Congress enacted the CVRA in order "to protect victims and guarantee them some involvement in the criminal justice process." *United States v. Moussaoui*, 483 f.3d 220, 234 (4th Cir. 2007). One of the rights in the CVRA is "the right to be reasonably heard at any public proceeding in the district court involving sentencing" of a defendant. 18 U.S.C. § 3771(a)(4).

MV is a victim covered by the CVRA. Because she is a minor, her parents are entitled to exercise her rights. Here, MV's mother and MV, herself, wish to be heard regarding defendant's sentence. At sentencing, they will make statements to the Court.

## V. CONCLUSION

For the reasons stated above, the government asks the Court to accept the parties' Rule 11 Plea Agreement, and impose a sentence of 11 years and 3 months (136 months).

                        Respectfully submitted,

                        DANIEL L. LEMISCH
                        Acting United States Attorney

                        s/ Leslie Wizner
                        LESLIE MATUJA WIZNER
                        Assistant United States Attorney
                        211 W. Fort Street, Suite 2001
                        Detroit, MI 48226
                        Phone: (313) 226-9766
Dated: October 19, 2017        E-Mail: leslie.wizner@usdoj.gov
                        Bar No. P42081

**Certificate of Service**

I hereby certify that on October 19, 2017, I electronically filed the Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following via electronic mail:

Penny Beardslee
Attorney for Defendant
Penny_Beardslee@fd.org

I further certify that on October 19, 2017, I filed Exhibit A and Exhibit B of the Government's Sentencing Memorandum, *under seal*, with the Clerk of the Court, and have Federal Expressed the documents to the following attorney of record:

Penny Beardslee
613 Abbott Street, 5th Floor
Detroit, MI 48226

s/Leslie Wizner
LESLIE MATUJA WIZNER (P42081)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9766
E-Mail: leslie.wizner@usdoj.gov