UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CR. NO. 16-20659

    v.        HONORABLE ARTHUR J. TARNOW

ANDREW WEIKEL,

        Defendant.

                                   /

**FOURTH SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR COMPASSIONATE RELEASE**

On October 6 and 20, 2020, Andrew Weikel filed supplemental briefs addressing an alternative housing proposal and the conditions at FCI Elkton, where he was incarcerated. Since then, the Bureau of Prisons transferred him to FCI Fort. This supplement provides this Court with information about the troubling conditions at FCI Fort Dix and responds to the government's arguments in its October 21 response. Mr. Weikel is at risk. This Court should grant compassionate release.

**A. There is a COVID-19 outbreak at FCI Fort Dix**

Last week, the BOP transferred Mr. Weikel and others from FCI Elkton to FCI Fort Dix. Although he had cause to be concerned about the conditions at Elkton, he has greater concern at Fort Dix. As of October 29, 2020, the BOP reports that 59

1

incarcerated people and 8 staff members have tested positive for COVID-19.[1] Just the day before, only 32 incarcerated people and 8 staff members were infected there. (Ex. A, BOP Screenshot 10/28/20) In just two days, the number of sick incarcerated people increased by 27.[2]

There are 2,619 people incarcerated at FCI Fort Dix. We do not know how many of those people have been tested because "[t]he number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility."[3] A negative test in June provides no information about whether a person has the virus in October or November.

**B. Mr. Weikel's cardiac conditions put him at risk**

Mr. Weikel's recent medical records confirm that he continues to have serious hearth conditions. Since May 2020, Mr. Weikel has had only one chronic care check-ins. He continues to suffer from heart failure and atrial fibrillation. A COVID-19

---

[1] Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed Oct. 29, 2020).
[2] The government argued that Weikel lacks support for his argument that Elkton's low active cases were due to a lack of testing.(R. 76, Gov't Resp. to Supp. Br., PgID 1049–50) But as reported in the ongoing class-action lawsuit against Elkton, in the days preceding Mr. Weikel's October 6 filing, the BOP reported completing only 3 Abbott Rapid Tests and 3 Quest Diagnostics swabs taken between October 2–4. *Wilson v. Williams*, No. 20-cv-00794, ECF #223, PgID 1848–49. On October 1, 2020, only 2 Abbot Test and 4 Quest swabs were performed. *Id.*, ECF #222, PgID 1846–47. After that filing, testing increased as the BOP prepared to move many people from Elkton to Fort Dix. But that does not mean it is testing staff or incarcerated people with sufficient frequency to catch the virus before there is another outbreak.
[3] Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed Oct. 29, 2020).

infection worsens existing atrial fibrillation, with one study showing 42% of all people who did not survive COVDI-19 had a history of atrial fibrillation.[4] Another study found that up to 75% older patients hospitalized due to COVID-19 had a history of atrial fibrillation.[5]

Mr. Weikel is also due to have a colonoscopy to address a polyp of the colon. That will not happen until "the covid crisis ends"—whenever that may be. (Gov't Ex. 1, R. 76-1, at 7)

COVID-19 may have long-lasting detrimental health effects even if a person survives and recovers from an initial infection. One study revealed the disturbing possibility that a COVID-19 infection increases the risk of developing Parkinson's disease.[6] Another recent study found that the antibodies developed after infection turned to "autoantibodies," which target the body's immune system.[7] And COVID-19 may not be a once-and-done illness. People are getting reinfected with the virus, and

---

[4] Gawalko, Monika et al., *COVID-19 associated atrial fibrillation: Incidence, putative mechanisms and potential clinical implications*, 30 *Intn'l J. of Cardiology. Heart & Vasculature* (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7462635/.
[5] *Id.*
[6] Jada Fisher, *Scientists say side effects of COVID-19 infection could set the stage for Parkinson's disease*, MLive (Oct. 29, 2020), https://www.mlive.com/news/grand-rapids/2020/10/scientists-say-side-effects-of-covid-19-infection-could-set-the-stage-for-parkinsons-disease.html.
[7] Apoorva Mandavilli, *Some Covid Survivors Have Antibodies That Attack the Body, not Virus*, N.Y. Times (Oct. 29, 2020), https://www.nytimes.com/2020/10/27/health/covid-antibodies-autoimmunity.html.

many get sicker.[8]

### C. Mr. Weikel has suitable housing

The government asks a number of questions about the suitability of the proposed housing for Mr. Weikel. The Probation Department has conducted a housing check and approved the proposed housing. Mr. Weikel's daughters or Probation can answer any additional questions about the suitability of this apartment, where he would live alone.

### D. Treatment is not available to Mr. Weikel

The government accuses Mr. Weikel of disingenuity by discussing the availability of programming at *FMC Devens*—a facility where Mr. Weikel is not incarcerated and has never been. Unlike FCI Elkton, which offers a sex-offender treatment program, FCI Fort Dix does not.[9]

Even if the government offered information about the programming options at FCI Elkton, it's hard to fault Mr. Weikel for not being aware of what programming is available. The extent of that programming at Elkton and elswhere remains unknown,

---

[8] Suzi Ring & Jason Gale, *Can You Get Covid Twice? What Reinfection Cases Really Mean*, Wash. Post (Oct. 29, 2020), https://www.washingtonpost.com/business/can-you-get-covid-twice-what-reinfection-cases-really-mean/2020/10/28/1cd3b53a-18d9-11eb-8bda-814ca56e138b_story.html.
[9] *See* Fed. Bureau of Prisons, *Sex Offenders*, https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp (last accessed Oct. 29, 2020) (listing locations offering sex-offender treatment programs).

as is most information about how the BOP is handling the COVID-19 crisis.[10] The BOP transitioned to the Phase Nine Action Plan at the beginning of October 2020, as announced on the BOP website on October 8, 2020. This change allows for limited social visits and "programming to the extent practicable."[11] Mr. Weikel was in quarantine awaiting transfer when these changes were made at FCI Elkton, and so none of this programming was made available to him.

Transferring to FMC Devens is not as simple as the government implies. To start, transfers between BOP facilities have been on hold until very recently. The government does not provide information about when FMC Devens began receiving people into its facility, but as of May 2020, it was not. (Ex. B, May 22, 2020 Letter)

Moreover, there is little chance Mr. Weikel could begin any programming at FMC Devens at this time. The residential sex offender treatment program requires no less than 27–36 months remaining in a person's sentence to begin the program.[12] Mr. Weikel has 26 months remaining (his scheduled release date is June 1, 2023). (*Id.*) Even if the BOP approved Mr. Weikel's transfer, he would have to be quarantined for

---

[10] Ockerman, Emma, *The Trump Administration Is Getting Sued Over COVID Exploding in Prisons: The American Civil Liberties Union is trying to get records to figure out what went wrong*, VICE (Oct. 21, 2020), https://www.vice.com/en/article/xgzq3q/the-trump-administration-is-getting-sued-over-covid-exploding-in-prisons.
[11] Fed. Bureau of Prisons, *BOP Modified Operations* (Oct. 8, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp.
[12] U.S. Sent'g Comm'n, *Inmate Classifications, Designations, and Programs* (2017), https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2017/BOP_Designation.pdf (last accessed Oct. 29, 2020).

14 days before the transfer and then another 14 days after arrival, meaning he would be unable to participate in any programming for a full month.[13]

The government blames Mr. Weikel for this, claiming that he "continues to avoid enrollment" in the program and "refus[es] to admit that he has a problem for which intensive treatment is necessary." (R. 76, Gov't Resp. to Supp. Br., PgID 1051) But this argument ignores the facts.

First, Mr. Weikel admitted to this Court that he has a problem and welcomed treatment. (R. 70, Tr. May 5, 2020 Hr'g, PgID 923)

Second, Mr. Weikel has been in a prison where there has been one of the most significant COVID-19 outbreaks in the country. The lockdown conditions limited his access to counselors, case managers, and programming. He has been living in fear of infection, severe illness, and death. So, to say that Mr. Weikel is to blame for not being at FMC Devens right now or that he should have requested placement in the program in the midst of all this chaos ignores this reality.

Third, the government continues to assume that the residential sex offender treatment program is appropriate for Mr. Weikel. But a BOP clinician must evaluate a person to determine which sex-offender treatment program is appropriate. When establishing a treatment plan BOP clinicians use the Static-99R test to decide is a person

---

[13] Ken Hyle, Asst. Dir. & Gen. Counsel, Fed. Bureau of Prisons, Letter to Hon. Randolph D. Moss (Oct. 13, 2020), https://infoweb.ao.dcn/bcastpdf/DIR20-196.pdf.

is a high-risk of reoffending.[14] Before sentencing, Dr. Nixon conducted a Static-99R and concluded that Mr. Weikel is a low-risk offender, making placement in the prosecution's preferred program unlikely. This finding further underscores that he is not a danger to the community.

Finally, the BOP's sex-offender treatment programs are not the only effective programs in the country. Mr. Weikel's has identified a program he can begin shortly after release. (Ex. C, May 26, 2020 Letter) Given Mr. Weikel's candid admission about his need and desire for treatment, this Court should not be concerned about his willingness or ability to seek appropriate treatment. Further, the special conditions of his release provide a mechanism to ensure compliance: this Court ordered Mr. Weikel to submit to psychological testing and to participate in appropriate programs. (R. 52, Judgment, PgID 401) His failure to do so would be a violation of supervised release.

## CONCLUSION

This Court should grant Andrew Weikel's motion for compassionate release.

Dated: October 29, 2020          Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Colleen P. Fitzharris
colleen_fitzharris@fd.org
Attorney for Andrew Weikel
613 Abbott St., Suite 500
Detroit, MI 48226
Phone: 313-967-5542

---

[14] BOP, Program Statement No. 5324.10, Sex Offender Programs 2.1.1 (Feb. 13, 2013), available at https://www.bop.gov/policy/progstat/5324_010.pdf.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2020, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system, which will send electronic notification of such filing to all counsel of record.

s/Colleen P. Fitzharris

Counsel for Andrew Weikel

613 Abbott Street, Suite 500

Detroit, Michigan 48226
