UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Criminal Case No. 16-20659

v.

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

ANDREW FRANK WEIKEL,

        Defendant.

_____/

**OPINION AND ORDER GRANTING ANDREW FRANK WEIKEL'S MOTION FOR COMPASSIONATE RELEASE [54]**

On June 9, 2017, defendant-petitioner, Andrew Frank Weikel, pleaded guilty to transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1). (ECF No. 44). On October 26, 2017, the Court sentenced Weikel to eight years in prison. (ECF No. 52, PageID.398). On April 22, 2020, the Court appointed the Federal Community Defender to represent Weikel on a Motion for Compassionate Release [54], which he filed the same day. (ECF No. 54; ECF No. 55). Following further briefing (ECF No. 60; ECF No. 65), the Court held a hearing on May 1, 2020, took Weikel's Motion [54] under advisement, and ordered the Government to describe the steps it could take to lower Weikel's risk. (ECF No. 66).

The Government responded on May 4, 2020. (ECF No. 68). The Court held a second hearing on May 5, 2020, after which it ordered the Probation Department to

report back on the suitability of Weikel's proposed release plan. (ECF No. 69). On May 12, 2020, the Government filed supplemental briefing informing the Court of additional facts that had come to its attention since the hearing. (ECF No. 71). On May 14, 2020, the Probation Department submitted its report. In October and November, Weikel and the Government submitted additional supplemental briefs addressing, among other things, changes in Weikel's proposed address. (ECF No. 73; ECF No. 74; ECF No.75; ECF No. 76; ECF No. 79; ECF No. 80; ECF No. 81).

For the reasons articulated below, the Court will **GRANT** Weikel's Motion [54], and reduce his sentence to time served.

## BACKGROUND

Weikel was born in Fort McClellan, Alabama in 1952. (PSR ¶ 43). Growing up, Weikel had to contend with frequent moves—across Alabama, Georgia, Kentucky, Indiana, and Ohio—as his father pursued his career. (*Id.*). Weikel's mother, meanwhile, suffered from schizophrenia. (*Id.*). She and Weikel's father both passed away in the early 2000s (*Id.*). Weikel was married for nearly thirty years until a divorce in 2005. (PSR ¶ 45). He has two adult children, both of whom reside in Indiana. (*Id.*). Weikel also has three siblings with whom he remains close. (PSR ¶ 44).

Weikel was retired at the time of the instant offense, however, prior to his retirement, he primarily worked in the service industry. (PSR ¶¶ 18, 57). It was

through that employment that he met Jackie, mother to MV-1. (ECF No. 18). Jackie and Weikel maintained a close friendship for a number of years, exemplified by the fact that he took out a mortgage to help her keep her home and later resided on her property while renting out his house. (PSR ¶¶ 14, 18). The offense conduct took place during the period that Weikel resided at Jackie's home. (*Id.*).

Weikel was arrested on August 7, 2016, while travelling back to the United States from Canada with MV-1, who was thirteen at the time. (PSR ¶ 11). MV-1's mother had suggested Weikel take her across the border to visit her sister in Ontario. (PSR ¶ 14). After being referred to secondary inspection at the border crossing, Weikel consented to a search of his electronic devices. (*Id.*). During that search, Customs and Border Patrol Agents discovered child pornography on his phone—in particular, several photos of an adult penis in close proximity and/or touching MV-1, who appeared clothed and asleep. (PSR ¶ 12). Weikel admitted to taking the photos to see if he could get away with it. (*Id.*). Forensic examination of his iPhone and computer later revealed that the photos had been taken between July 9, 2016 and August 3, 2016—the weeks preceding the trip when Weikel was staying at MV-1's home and she was sleeping in the living room. (PSR ¶ 15).

Weikel is currently sixty-eight years old, incarcerated at FCI Fort Dix, and scheduled for release on June 1, 2023. *Find an Inmate*, FED. BUREAU PRISONS,

https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 54914-039)

(last visited November 10, 2020).

## ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the

compassionate release statue, provides, in relevant part:

> **(A)**  [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or
> the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier, may
> reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that
> does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section
> 3553(a) to the extent that they are applicable, if it finds that—
>
> > **(i)**  extraordinary and compelling reasons warrant such a
> > reduction.
>
> [. . .]
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. <u>Exhaustion</u>

Before a petitioner moves for compassionate release under 18 U.S.C. §

3582(c)(1), they must either exhaust their administrative remedies with the BOP or

wait thirty days from when they filed a request with their warden. *United States v.*

*Alam*, 960 F.3d 831, 832 (6th Cir. 2020). The Government acknowledges that

Weikel requested compassionate release on April 15, 2020. (ECF No. 60,

PageID.572). Accordingly, the Court finds that Weikel has exhausted his administrative remedies.

"The Court now has three questions to answer: first, whether extraordinary and compelling reasons warrant a reduction in sentence, second, whether [Weikel] poses a danger to the community, and third, whether a sentence reduction is consistent with the § 3553(a) factors." *Crider v. United States*, No. 01-81028-1, 2020 U.S. Dist. LEXIS 133233, at *4 (E.D. Mich. July 28, 2020).

B. <u>Extraordinary and Compelling Reasons for Release</u>

In order to ascertain whether there are extraordinary and compelling reasons to release Weikel, the Court must determine if a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Application Notes to the relevant policy statement provide the following:

> **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>> **(A) Medical Condition of the Defendant.—**
>>> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>> **(ii)** The defendant is—
>>>> **(I)** suffering from a serious physical or medical

          condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

[. . .]

**(D)  Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13. Here, Weikel has presented "Other Reasons" in combination with "Medical Condition[s]" to warrant compassionate release.

Weikel is sixty-eight years old and suffers from severe cardiovascular issues including heart failure and atrial fibrillation. (ECF No. 77-1, PageID.1115). Weikel most recently received emergency treatment on February 26, 2020 after feeling dizzy and losing consciousness. (ECF No. 63-2, PageID.782-83). He also suffered a heart attack in early 2019. (ECF No. 63-2, PageID.681). According to the CDC, "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." *Older Adults*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html [https://perma.cc/8EPA-F72Q] (last updated Sept. 11, 2020). Approximately eighty percent of COVID-19 deaths in the United States have been amongst people over the age of sixty-five, like Weikel. *Id.* In addition, the CDC has

also recognized that cardiovascular conditions, like heart failure, put adults at greater risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/42WN-G7CY] (last updated Nov. 2, 2020).

Weikels's risk is further exacerbated by the outbreak of COVID-19 at FCI Fort Dix, which, at 229 confirmed cases, is currently the most severe of any BOP facility in the nation. *COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/2NBK-22DX] (last updated Nov. 10, 2020); *see also* Keegan Hamilton, *Federal Prisons Keep Turning Into COVID Nightmares: 'Everyone Looks Like Death'*, VICE (Nov. 12, 2020), https://www.vice.com/en/article/n7vba8/federal-prisons-keep-turning-into-covid-nightmares-everyone-looks-like-death [https://perma.cc/S4K4-AGSN] (describing how the outbreak at FCI Fort Dix exploded through late-October transfers from FCI Elkton, like Weikel's). Indeed, the outbreak may be even worse than is apparent from these numbers, as fewer than half of Fort Dix's inmates have received tests. *Compare COVID-19 Coronavirus*, FED. BUREAU PRISONS (1,159 completed tests), *with FCI Fort Dix*, FED. BUREAU PRISONS, https://www.bop.gov/locations/institutions/ftd/ [https://perma.cc/U2WK-2ZNB] (last visited Nov. 11, 2020) (2,780 total inmates); *see also* Hamilton, *Federal*

*Prisons Keep Turning Into COVID Nightmares* ("[FCI Fort Dix] has been placed on a lockdown to contain the virus, but Kokotajlo, the staff union president, said he routinely sees staff and senior managers flouting the rules and moving from one side of the compound to another."). Accordingly, the Court finds that there are extraordinary and compelling reasons for Weikel's release.

C. Dangerousness

Federal Sentencing Guideline 1B1.13 provides for compassionate release only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The Government argues that the nature of Weikel's offense and his alleged failure to acknowledge that he has a problem preclude release on dangerousness grounds. (ECF No. 81, PageID.1174). Though Weikel's dangerousness is admittedly a close question, the Court disagrees with the Government.

Weikel's offense was exceptionally serious, however, contrary to the Government's assertions, he *has* taken the critical step of both admitting that he has a problem and agreeing to treatment. (ECF No. 70, PageID.923). The Government's claim in its most recent filing—that Weikel declined to receive sex offender treatment at FCI Fort Dix—is misleading. No sex offender treatment programs are offered at Fort Dix. *See Custody & Care: Sex Offenders*, FED. BUREAU PRISONS, https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp

[https://perma.cc/HR38-F7G4] (last visited Nov. 11, 2020). Moreover, while the Court recognizes that Weikel did not request transfer to a facility with a residential treatment program as the Government argues he should have, the Court is at a loss to see why the BOP failed to place Weikel at such a facility if it was going to transfer him to a new location anyway.

In any case, the Court is not persuaded that an inpatient treatment program is essential for Weikel's rehabilitation. Weikel underwent a lengthy neuropsychological and risk assessment evaluation in 2017. (ECF No. 54-2, PageID.436). Using a risk assessment instrument designed to predict sexual recidivism in male offenders, Dr. William R. Nixon, Jr. found Weikel to be "Low Risk." (ECF No. 54-2, PageID.441). Additionally, while Weikel was diagnosed with Scopophilia, a paraphilic disorder, and Unspecified Depressive Disorder, Dr. Nixon found that Weikel's behavior was *not* consistent with any type of Pedophilic Disorder. (ECF No. 54-2, PageID.442). Dr. Nixon noted, however, that if Weikel's depressive illness and anxiety worsened "to the point [that] they incorporate[d] psychotic thinking and behavior, . . . the threshold for all manner of behavioral acting-out [would] become . . . lowered." (ECF No. 54-2, PageID.443). He accordingly recommended electronic monitoring, a neuropharmacological evaluation, weekly psychotherapy, and a group sex offender treatment program. (ECF No. 54-2, PageID.443). The Court agrees with these recommendations and

finds that they will be sufficient, but not greater than necessary, to assure the safety of the community.

The Court's confidence in this conclusion is bolstered by Weikel's clean record inside and outside of prison—there are no indications of the sort of psychotic thinking or behavior warned of by Dr. Nixon—as well as his proposed release plan, which involves him living alone and attending an eighteen to twenty-four month sex-offender treatment program that is similar to the program offered by the BOP. (PSR ¶ 36, ECF No. 63-1, PageID.590; ECF No. 72, PageID.1026; ECF No. 75, PageID.1042-43). Weikel's daughter, a social worker who will live nearby, has also offered to support his reentry. (ECF No. 79-3, PageID.1160). The Court finds that with the above support systems in place, Weikel will not present a danger upon release.

D. <u>Section 3553(a) Factors</u>

The last step a District Court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a). Those are as follows:

**(a)** **Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
   **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
   **(2)** the need for the sentence imposed—

    **(A)**   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)**   to afford adequate deterrence to criminal conduct;

    **(C)**   to protect the public from further crimes of the defendant; and

    **(D)**   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)**   the kinds of sentences available;

**(4)**   the kinds of sentence and the sentencing range established for—

    **(A)**   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

    [. . .]

**(5)**   any pertinent policy statement—

    [. . .]

**(6)**   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)**   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

The Court's consideration of these factors is demonstrated both in this opinion's analysis of U.S.S.G. 1B1.13 and on the record of the May 1, 2020 and May 5, 2020 hearings.

Weikel has been in custody at this point for more than four years. (PSR ¶ 11). In light of the fact that this is Weikel's first time in prison, the Court finds that this period of incarceration has sufficiently deterred future criminal conduct, afforded just punishment, and promoted respect for the law. To the extent that others may have been deterred by Weikel's prosecution, that deterrent effect was felt at the time

Weikel was caught and will not be diminished by the Court's modification of his sentence.

Moreover, Weikel is currently incarcerated in a facility without any sex offender treatment program. As of May 22, 2020, FMC Devens, where the Government maintains Weikel should go, was not accepting inmates into its residential treatment program in light of COVID-19. (ECF No. 79-3, PageID.1159). Thus, although Weikel may be technically eligible for a residential treatment program, it is unclear whether, with COVID-19 cases rapidly rising across the country and the program's typical waitlist, Weikel would even be able to complete the program prior to finishing his sentence. Moreover, in light of the opinion of Dr. Nixon, the Court is not persuaded that inpatient residential treatment is truly a necessity for Weikel. Ultimately, it seems that Weikel will better be able to access treatment outside of BOP custody.

While the nature of Weikel's offense was undeniably serious, it did not merit a death sentence, which, in light of his age and medical conditions, Weikel is at great risk of receiving if he remains incarcerated at FCI Fort Dix. In light of the above considerations, the Court finds that a sentence reduction to time served is consistent with the § 3553(a) factors.

CONCLUSION

**IT IS ORDERED** that Weikel's Motion for Compassionate Release [54] is

**GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Weikel be **IMMEDIATELY**

**RELEASED** to the Northern District of Indiana to begin his five-year term of

**SUPERVISED RELEASE**, as outlined by the October 26, 2017 Judgment (ECF

No. 52, PageID.399), including the following additional Special Conditions:

**The defendant shall undergo a strict fourteen-day quarantine upon his release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**

**The defendant shall participate in the Location Monitoring Program for 365 consecutive days and shall abide by all the requirements of that program. Curfew: The defendant is restricted to his residence for the duration of the Location Monitoring Program, according to a curfew as directed by the probation officer. Technology at the discretion of the probation office. The Court waives the cost of the program.**

**In determining appropriate treatment pursuant to the Court's Judgment [52], the probation office shall give deference to the recommendation of Dr. Nixon that the defendant "undergo a neuropsychopharmacological examination to be prescribed the appropriate medication for his depression and anxiety," that the defendant "be seen in at least once-a week, ideally twice a week outpatient psychotherapy," and that the defendant "enroll in a group psychotherapy treatment specifically designed to treat adult men with paraphilic disorders." (ECF No. 54-2, PageID.443). The Court notes its approval of the treatment program offered by Headwaters Counseling Services in Fort Wayne, Indiana.**

**The defendant shall make no attempt to locate or communicate with the victim, MV-1, directly or through a third party. The defendant shall also make no attempt to locate or communicate with the victim's mother, Jackie, directly or through a third party.**

**SO ORDERED**.

<u>s/Arthur J. Tarnow</u>
Arthur J. Tarnow
Dated: November 13, 2020          Senior United States District Judge